UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.B., a minor, by and through his Guardian Ad Litem, Cheyana Brown, Individually and as Successor in Interest to Mathew R. Baker,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SISKIYOU, a public entity; et al.,<br><br>Defendants. | No. 2:16-cv-01752-MCE-EFB<br><br><br><br>**MEMORANDUM AND ORDER** |
| A.H., a minor, by and through his Guardian Ad Litem, Kendra Howard; LISA INMAN,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SISKIYOU, a public entity; et al.,<br><br>Defendants. | No. 2:17-cv-01078-MCE-EFB |

By way of these actions, Plaintiffs A.B. ("A.B.") and A.H. ("A.H."), both minors, by and through their Guardians ad Litem, and Plaintiff Lisa Inman ("Inman") (collectively with A.B. and A.H., "Plaintiffs") seek redress from the County of Siskiyou ("County"),

Sheriff Jon Lopey ("Lopey"), Deputy Jeff Huston ("Huston"), and Deputy Christopher Miller ("Miller") (collectively "Defendants") for alleged constitutional violations arising out of the suicide of Mathew R. Baker ("Decedent") when he was in Defendants' custody. According to Plaintiffs, who are Decedent's children and mother respectively, Defendants are liable for various injuries sustained as a result of his death. Presently before the Court are Defendants' Motions for Summary Judgment (ECF No. 25 filed in Case No. 2:17-cv-01078 and ECF No. 36 filed in Case No. 2:16-cv-01752[1]), which for the reasons outlined below, are GRANTED in part and DENIED in part.[2]

## BACKGROUND

On March 2, 2015, Mathew R. Baker, Decedent, was arrested and processed into the Siskiyou County Jail ("Jail") as a pre-trial detainee. Pls.' Compl., ECF No. 1, ¶ 9. At the time Decedent was booked into the Jail, he went through an intake procedure in which he was screened for medical and behavioral issues that might affect his stay. Pls.' Resp. to Defs.' UMF ("Pls.' Resp."), ECF No. 53, ¶ 8. Decedent was evaluated by mental health professionals, including Dr. William E. Lofthouse, a psychiatrist providing mental health services in the jail, who diagnosed him with "schizoaffective disorder." Pls.' Resp. ¶¶ 8, 23. Decedent's medical records, psychological records, and family history documents show a long and extensive history of mental illness prior to incarceration, and he was appropriately identified as an at-risk inmate. Id. ¶ 21. In addition, Dr. Lofthouse conducted 14 individual therapy sessions with Decedent. Id. ¶ 24.

According to Plaintiffs, on approximately July 30, 2015, Decedent called his mother and allegedly indicated there was a "cord" in his cell that he could use to hang

---

[1] The Court will cite to documents filed in Case No. 2:16-cv-01752 only throughout the Order.

[2] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

2

himself. Id. ¶ 14.  Upon notification to the Jail, a "Deputy Hudson" searched the Decedent's "cell," but did not discover any cord.  Id. ¶ 17; Ex. 8, ECF 55-8.

Just over a month later, on September 3, 2015, Decedent attended an individual therapy session with Dr. Lofthouse.  Id. ¶ 35.  Upon leaving his session, Decedent returned to the F-1 unit where he was being housed sharing day room space with another inmate, one Mr. Lawrence, who informed Decedent that he intended to go into his own cell to use the bathroom.  Id. ¶ 40.  Shortly thereafter, Decedent attempted to commit suicide using an improvised ligature to hang and or asphyxiate himself thereby inducing hypoxia and cardiac arrest.  Said improvised ligature was fashioned from a coaxial television cable that had been located in the day room area of F-1 unit.  Pls.' First Am. Compl. ("FAC"), ECF No. 28, ¶ 13.

When Mr. Lawrence emerged from his cell into the day room he observed Decedent hanging from a cable underneath the TV.  Pls.' Resp. ¶ 41.  Mr. Lawrence then used the intercom to contact Central Control.  Id. Resp. ¶ 41.  Deputy Miller, who was located in a room next to the F-1 unit, spoke with Mr. Lawrence and then contacted medical staff and emergency services, who transported Decedent to Fairfield Medical Center.  Id. ¶¶ 42-44; Defs.' Reply ISO MSJ, ECF No. 57, ¶ 27.  Decedent died secondary to the self-inflicted injuries he sustained on September 3, 2015.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex, 477 U.S. at 325.

///

///

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. 87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

Plaintiff A.B. seeks relief by way of four state and federal causes of action: (1) 42 U.S.C. Section 1983 ("§ 1983") survival claim based on the deprivation of life and liberty without due process of law and failure to protect against unreasonable and cruel and unusual punishment under the Fourteenth Amendment; (2) § 1983 wrongful death claim due to the interference in and deprivation of the familial relationship; (3) survival claim based on negligence, pursuant to California Civil Procedure Code § 377.30; and (4) wrongful death claim based on negligence, pursuant to California Civil Procedure

Code § 377.60. Because the causes of action set forth in the action filed by A.H. and Lisa Inman seek the same relief as A.B. in the Second Cause of Action, the Court addresses all Plaintiffs jointly in that regard.

### A. First Cause Of Action Pursuant To 42 U.S.C. § 1983

Under 42 U.S.C. § 1983, an individual may sue "[e]very person who, under color of [law] subjects" him "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." As opposed to prisoner claims, which are governed by the Eighth Amendment, a pretrial detainee is entitled to be free from cruel and unusual punishment under the due process clause of the Fourteenth Amendment.

#### 1. Individual Defendants: Huston, Lopey and Miller

Plaintiff A.B., as successor in interest to Decedent's estate, alleges that individual Defendants Huston, Lopey, and Miller deprived Decedent of his civil rights by failing to monitor, supervise, and protect him as a pre-trial detainee. A.B. also alleges Defendants failed to provide custodial and medical care to Decedent, which amounts to cruel and unusual punishment and a deprivation of his life without due process in violation of the Fourteenth Amendment. Pls.' FAC ¶¶ 24, 32.

The Due Process Clause requires that "persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs." Carnell v. Grimm, 74 F.3d 977, 979 (9th Cir. 1996). To establish a claim for the violation of this right, a pretrial detainee must first show a "serious medical need." Id. A pretrial detainee may establish this element by showing he suffered from a serious injury while confined or maintained a heightened risk of suicide. See Clouthier v. Cnty. of Contra Costa, 591 F.3d 1232, 1240 (9th Cir. 2010), overruled on other grounds by Castro v. Cnty. of Los Angeles, 833 F.3d 1060 (9th Cir. 2016) ("We have long analyzed claims that correction facility officials violated pretrial detainees' constitutional rights by failing to address their medical needs (including suicide prevention) . . .").

Second, a pretrial detainee must show the defendant officials were deliberately indifferent to that serious medical need. Conn v. City of Reno, 591 F.3d 1081, 1095 (9th

6

Cir. 2010), cert. granted, judgment vacated sub nom. City of Reno, Nev. v. Conn, 563 U.S. 915 (2011), and opinion reinstated, 658 F.3d 897 (9th Cir. 2011). In Castro v. County of Los Angeles, the Ninth Circuit held that an objective deliberate indifference standard applies to pretrial detainees' Fourteenth Amendment failure to protect claims, instead of the partially subjective standard applied in prior caselaw. 833 F.3d 1060 (9th Cir. 2016) (overruling Clouthier v. County of Contra Costa and implying a failure to prevent suicide case should be analyzed under an objective deliberate indifference standard); see also Gordon v. Cnty. of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018) (applying the objective deliberate indifference standard to claims for violations of the right to adequate medical care and stating the "Supreme Court has treated medical care claims substantially the same as other conditions of confinement violations including failure-to-protect claims"); Horton by Horton v. City of Santa Maria, 915 F.3d 592, 599-603 (9th Cir. 2019) (stating the objective standard would apply because the case involved a pretrial detainee's Fourteenth Amendment claim for violation of the right to adequate medical care, but finding the case law at the time too sparse to "establish a reasonable officer would [have] perceive[d] a substantial risk" that the decedent would attempt suicide).

    In sum, in order show deliberate indifference, a pretrial detainee must show: "(1) [t]he defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) [t]hose conditions put the plaintiff at substantial risk of suffering serious harm; (3) [t]he defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) [b]y not taking such measures, the defendant caused the plaintiff's injuries. Castro, 833 F.3d at 1071. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn[ ] on the facts and circumstances of each particular case." Id. (internal citations and quotation marks omitted).

Both supervisors and non-supervisor officials may be liable for acting or failing to act in a manner that is deliberately indifferent. "A supervisor may be held liable under § 1983 if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." Cunningham v. Gates, 229 F.3d 1271, 1292 (9th Cir. 2000), as amended (Oct. 31, 2000). "The requisite causal connection can be established . . . by setting in motion a series of acts by others . . . or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." Starr v. Baca, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (internal quotation marks omitted). For example, supervisors may be held liable for: "their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless . . . indifference to the rights of others." Id.

A.B. first contends that Huston, as the officer responsible for "day to day operation of the jail," was personally responsible for the placement of the television and coaxial cables and subsequent failure of their removal, and for failing to create Jail policies that would minimize the risk of suicide. Pls.' Resp. ¶ 2; Pls.' Mem. Opp'n Defs.' Summ. J., ECF No. 49, 18:9-21. In addition, A.B. argues that Lopey acquiesced in the omissions of Huston and failed to review policies or procedures that violated the Fourteenth Amendment rights of pretrial detainees. Pls.' Mem. Opp'n Defs.' Summ. J. at 18:22-19:4. Finally, as to the individual Defendants, A.B. contends that at the time of Decedent's death, Miller was located in a room within view of Decedent and thus could purportedly have prevented or responded more quickly to the cell. Pls.' Mem. Opp'n Defs.' Summ. J. at 19:5-11.

Factual disputes remain precluding entry of summary judgment as to each of these claims. Although Defendants disagree that the failure to remove the cable from the day room of the F-1 unit resulted in deliberate indifference, the parties agree that:

(1) the Jail was notified of Decedent's potential ability to kill himself with a "cord," and (2) a subsequent search did not turn up that item. Pls.' Resp. ¶ 17. It is unclear to the Court, by way of example, how thoroughly the search was conducted (e.g., whether it encompassed the entire F-1 unit, including the day room where the cord was located, or only Decedent's cell). Id. Resp. ¶ 17. Based on this evidence, summary judgment as to the individual Defendants would be inappropriate.

### 2. Entity Defendant: County of Siskiyou

A.B. also seeks to hold the County accountable under Monell v. Dep't of Soc. Servs. of City of New York, which provides that "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief." 436 U.S. 658, 690 (1978). To establish municipal liability, the plaintiff must show that a policy or custom led to the plaintiff's injuries and the policy or custom "reflects deliberate indifference to the constitutional rights of its inhabitants." City of Canton, Ohio v. Harris, 489 U.S. 378, 385-92 (1989). The case law, however, carefully delineates so called Monell liability, which makes such an entity responsible for its own illegal acts, from vicarious liability for the conduct of its employees under § 1983, which does not attach. Connick v. Thompson, 563 U.S. 51, 60-61 (2011) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)). To constitute deliberate indifference, the County's shortcomings must be "obvious," with inadequacy "so likely to result in violation of constitutional rights that the policymakers . . . can reasonably be said to have been deliberately indifferent . . ." City of Canton, 489 U.S. at 390. Even if no explicit policy is identified, a plaintiff may still establish municipal liability upon a showing of a permanent and well-settled practice by the municipality that gave rise to the alleged constitutional violation. See City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).

Here, A.B contends there was a demonstrated practice of failing to comply with Title 15 safety check requirements and the County's policies designed to protect inmates because: (1) the County failed to implement direct visual observations on irregular schedules as required under Title 15, and (2) failed to conduct irregular safety checks as

required by Jail policies.  Pls.' Further Disp. Facts Opp'n Defs.' Mot. Summ. J. ("Pls.' Disp. Facts"), ECF 54, ¶¶ 5, 8; Defs.' Reply Supp. Summ. J. ¶ 10.  Although the Defendants disagree that there is a causal relationship between the security checks and Decedent's injuries, A.B. argues that the County created a situation in which Decedent could reasonably conclude he had enough time to commit suicide because he knew security checks were conducted at the half hour mark, rather than being staggered.  Pls.' Disp. Facts ¶ 10.  In viewing the facts in the light most favorable to A.B., this Court finds that he has identified a triable issue of fact with respect to the County's custom and practice liability.  Therefore, Defendants' Motion for Summary Judgment under the First Cause of Action is DENIED.

**B.     Second Cause Of Action Pursuant To 42 U.S.C. § 1983**

"Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct."  Lemire v. Cal. Dep't of Corr. & Rehab., 726 F.3d 1062, 1075 (9th Cir. 2013).  Because both the First and Second Causes of Action are based on Fourteenth Amendment violations, the same standard discussed above applies to this cause of action.

Here, Plaintiffs base their claims on the alleged constitutional violations discussed in the First Cause of Action.  While Defendants contend the officers' actions do not rise to the level that they shock the conscience, and further claim that the Monell doctrine limits the County's liability, this Court has found, as discussed above, that triable issues of material fact preclude summary judgment of the First Cause of Action.  Defs.' Mem. Supp. Summ. J., ECF No. 37, 13:5-14:19; see infra § A.  In light of that conclusion, the Court also finds the Defendants have failed to establish that they are entitled to summary judgment on this Fourteenth Amendment claim related to the violation of the right to familial association.  See Estate of Joshua Claypole v. Cnty. of San Mateo, No. 14-CV-02730-BLF, 2016 WL 127450, at *12 (N.D. Cal. Jan. 12, 2016) (denying summary judgment as to the familial deprivation claim when triable issues of material fact

precluded the granting of summary judgment as to plaintiff's deliberate indifference claim); see also Campos, 2017 WL 915294 at *9. Therefore, Defendants' Motions for Summary Judgment as to A.B.'s Second Cause of Action (and A.H. and Inman's related claims) are DENIED as well.

### C. Qualified Immunity

Even if summary judgment is precluded on the merits of the above claims, Defendants argue the individual Defendants are entitled to qualified immunity. Defs.' Mem. Supp. Summ. J. at 14:25-16:24. The qualified immunity analysis has two prongs: (1) whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right," and (2) "whether the right was clearly established." Saucier v. Katz, 533 U.S. 194, 201-02 (2001). However, courts may "bypass[ ] the constitutional question in the qualified immunity analysis," i.e., the first prong, and address only the second prong when "it will 'satisfactorily resolve' the . . . issue without having 'unnecessarily to decide difficult constitutional questions.'" Ramirez v. City of Buena Park, 560 F.3d 1012, 1023 (9th Cir. 2009) (quoting Brosseau v. Haugen, 543 U.S. 194, 201–02 (2004) (Breyer, J., concurring)).

The same disputed material facts discussed above prevent the Court from determining whether the individual Defendants are entitled to qualified immunity. See Sinaloa Lake Owners Ass'n v. City of Simi Valley, 70 F.3d 1095, 1099 (9th Cir. 1995) ("If there are genuine issues of material fact in issue relating to the historical facts of what the official knew or what he did, it is clear that these are questions of fact for the jury to determine."). If all factual disputes are resolved in Plaintiffs' favor, the jury could find that Huston placed and failed to remove the television cord from Decedent's unit and failed to implement policies that would address suicide prevention, even though he knew of Decedent's heightened risk of suicide. The jury could also find Lopey acquiesced in Huston's actions, and Miller failed to seek timely medical attention while he maintained a clear view of Decedent. A jury may find such conduct would be contrary to clearly

established law providing pretrial detainees a right to not have officials deliberately indifferent to their serious medical needs. Therefore, dispute of material facts preclude a finding that the Defendants are entitled to qualified immunity.

### D. Third Cause Of Action: Survival Claim Based On Negligence

A.B's Third Cause of Action, a survival negligence claim, is advanced under California Civil Procedure Code § 377.30, which allows a Decedent's successor in interest to bring a negligence claim after Decedent's death. In California, a plaintiff must prove the following elements for a negligence claim: (1) a legal duty to use due care; (2) a breach of that duty; (3) causation; and (4) damages. A negligent act "is not the proximate cause of [a decedent's] alleged injuries if another cause intervenes and supersedes . . . liability for the subsequent events." Campos, 2017 WL 915294 at *14 (internal citations omitted). Moreover, California limits damages in cases such as this one as follows:

> In an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable are limited to the loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived, <u>and do not include damages for pain, suffering, or disfigurement</u>.

Cal. Code Civ. P. § 377.30 (emphasis added).

Here, A.B. alleges all Defendants were negligent in monitoring and supervising the incarceration of Decedent. However, Defendants argue summary judgment is appropriate because Plaintiffs failed to show a triable issue of fact as to an essential element of his claim, namely pre-death economic damages. Defs.' Mem. Supp. Summ. J. at 17:21-26. This Court agrees. The language of the statute is clear that pain and suffering are not allowable damages. Given Defendants' evidence that Decedent was incarcerated, did not lose wages or incur medical expenses or other pecuniary losses, A.B. cannot show any damages sustained by Decedent under

///

California law.  Accordingly, Defendants' Motion for Summary Judgment as to Plaintiffs' Third Cause of Action is GRANTED.

### E. Fourth Cause Of Action: Wrongful Death Claim Based On Negligence

A.B.'s Fourth Cause of Action, a wrongful death negligence claim, is advanced under California Code of Civil Procedure § 377.60, "which is simply the statutorily created right of an heir to recover for damages resulting from a tortious act which results in decedent's death." Gilmore v. Superior Court, 230 Cal. App. 3d 416, 420 (1991) (citations omitted).  To establish a negligence claim, a plaintiff must prove the same negligence elements as stated above.[3]  And once again, the same factual issues that preclude summary judgment on A.B.'s § 1983 claim, also preclude summary judgment on this negligence claim as to the individual Defendants.

Special rules and exceptions nonetheless apply in negligence lawsuits involving public employees and public entities where prisoners were injured.  While "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment . . .", Cal. Gov't. Code § 815.2, that rule does not apply in the case of injuries to prisoners, see Cal. Gov't. Code § 844.6 (providing "a public entity is not liable for . . . an injury to any state prisoner.").  Further exceptions to the exception apply however.

For example, § 845.6 provides that both a public employee and a public entity are liable "for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody" if, the employee, while acting in the scope of his employment, "[knew] or [had] reason to know that the prisoner [was] in need of immediate medical care and he fail[ed] to take reasonable action to summon such medical care."  As indicated above, factual disputes preclude granting summary judgment in favor of Miller for failure to timely respond to Mr. Lawrence's distress call.

///

---

[3] Unlike with the foregoing cause of action, the damages here go to remedy injuries to A.B., not to Decedent.

13

Accordingly, based on the interplay between §§ 844.6 and 845.6, the County cannot be liable for any injury to a prisoner, unless, while acting in the scope of his employment, one of its public employees knew or had reason to know that a prisoner was in need of immediate medical care and failed to take reasonable action to summon medical care. Cal. Gov't. Code § 844.6; Cal. Gov't. Code § 845.6; see also Shaymus, 2015 WL 3466942 at *9-*10 (E.D. Cal. June 1, 2015). Therefore, the County may only be liable for this state claim based on the analysis above regarding Miller's failure to summon medical care. Because there is a genuine dispute of material fact regarding that claim, summary judgment cannot be granted on that theory.[4] In conclusion, Defendants' Motion for Summary Judgment for A.B.'s Fourth Cause of Action is DENIED as to the individual Defendants and as to the County's liability for the conduct of Miller and GRANTED as to the remaining claims against the County.

## CONCLUSION

For the reasons just stated, Defendants' Motions for Summary Judgment (ECF No. 25 filed in Case No. 2:17-cv-01078 and ECF No. 36 filed in Case No. 2:16-cv-01752) are GRANTED in part and DENIED in part as follows:

///
///
///
///

---

[4] Defendants' remaining immunity arguments are also not well taken. Section 845.2 does not apply to limit their liability for negligence because A.B. does not allege liability for failure to provide sufficient equipment, personnel or facilities therein. Nor have Defendants Lopey and Huston met their burden in demonstrating they "consciously balanced the risks and benefits required to make a showing that discretionary immunity applies" under § 820.2. See AE ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 640 (9th Cir. 2012) "[T]he burden rests with government defendants to demonstrate that they are entitled to § 820.2 immunity for a specific policy decision made by an employee who consciously balanced the decision's risks and benefits."); Caldwell v. Montoya, 10 Cal. 4th 972, 982 (1995); Brown v. Cnty. of Mariposa, No. 1-18-CV-01541-LJO-SAB, 2019 WL 1993990, at *13 (E.D. Cal. May 6, 2019); Defs.' Mot. Summ. Judg. ECF No. 37 19:5-16.

14

As to the First Cause of Action, Defendants' Motion for Summary Judgment is DENIED. As to A.B.'s Second Cause of Action (and A.H. and Inman's related claims), Defendants' Motions for Summary Judgment are DENIED. As to the Third Cause of Action, Defendants' Motion for Summary Judgment is GRANTED. Lastly, as to the Fourth Cause of Action, Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

Dated: September 30, 2019

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE